UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MARLON DEMETRIUS MCCARTHAN,

      Petitioner,

v.                                      Case No.  4:15cv406/MW/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1). Respondent filed an answer, providing relevant portions of the state court record (doc. 34). Petitioner replied (doc. 43). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On April 9, 2010, petitioner approached Ulysses Robinson from behind as Robinson was about to enter his vehicle, pointed a gun at him and demanded he empty his pockets.  Robinson turned and faced petitioner, saw petitioner's gun pointed at his (Robinson's) chest, and told petitioner and his associate that he did not have any money.  Petitioner repeated his demand.  Petitioner's cohort instructed Robinson not to run.  Robinson, fearing for his life, took his wallet from his pants pocket, threw it on the ground toward petitioner and his cohort, and told them they could take his wallet.  Petitioner and his associate looked at the wallet and walked away.  (Doc. 34, Ex. A, p. 8 (probable cause affidavit); *see also* Ex. C, pp. 31-64 (Robinson's trial testimony)).[1]

Petitioner was charged in Leon County Circuit Court Case No. 2010-CF-1349, with attempted armed robbery with a firearm, in violation of Sections 777.04, 775.087 and 812.13(2)(a), Florida Statutes.  (Ex. A, p. 6)  The State filed a notice of intent to seek petitioner's enhanced sentencing under Florida's Prison Releasee Reoffender (PRR) Act, asserting that the charged offense occurred within three years

---

[1] All references to exhibits are to those provided at Doc. 34.  When a particular page of an exhibit has more than one page number, the court cites the number appearing at the bottom right corner of the page.

of petitioner's release from the Florida Department of Corrections' custody on February 21, 2009, and that the pending charge was a qualifying offense or a felony involving the use or threat of physical force or violence against an individual under Section 775.082(9), Florida Statutes.  (Ex. A, p. 17).

A jury trial was held on October 28, 2010, which ended in a mistrial after a jury deadlock.  (*See* Ex. A, p. 62 (order noting same)).  Petitioner was re-tried on January 24, 2011.  (Exs. C, D (trial transcript)).  The jury found petitioner guilty as charged and also found that he actually possessed a firearm during commission of the offense.  (Ex. A, p. 103-04; Ex. D, pp. 299-300).  Petitioner was sentenced to 15 years in prison and adjudicated a PRR, which means he must serve 100 percent of his sentence.  (Ex. A, pp. 141-42 (sentencing transcript); Ex. A, pp. 105-113 (judgment)).

On direct appeal, petitioner's appellate counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *In re Anders Briefs*, 581 So. 2d 149 (Fla. 1991).  Counsel asserted she was unable to make a good faith argument that reversible error occurred in the trial court, with the exception of the trial court's improper imposition of a fine, a surcharge, an administrative fee and cost of prosecution.  (Ex. H (*Anders* brief); *see also* Ex. F (motion to correct sentencing

errors)).  Petitioner filed a *pro se* brief raising three issues:  the trial court erred in denying his motion for judgment of acquittal; the trial court erred in denying his motion for mistrial, and the trial court erred in imposing certain costs.  (Ex. I).  On July 3, 2012, the Florida First District Court of Appeal (First DCA) affirmed petitioner's judgment and sentence, but struck one cost.  *McCarthan v. State*, 91 So. 3d 268 (Fla. 1st DCA 2012) (copy at Ex. M).  The mandate issued July 31, 2012.  (Ex. M).  An amended judgment striking the improper cost was entered August 3, 2012.  (Ex. N).

On August 14, 2012, petitioner filed a *pro se* motion to mitigate sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. O).  The state circuit court denied the motion on August 20, 2012.  (*Id.*).  The order was not appealable.  *See Mitchell v. State*, 719 So. 2d 1258 (Fla. 1st DCA 1998) (holding that a Rule 3.800(c) motion "is addressed to the discretion of the trial court; thus, an appellate court "has no jurisdiction to review the correctness of the trial court's disposition of the motion."); *Edwards v. State*, 53 So. 3d 1131 (Fla. 1st DCA 2011) (observing that a trial court's order denying a motion to mitigate sentence under Rule 3.800(c) is "not an appealable order").

Also in August 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. (Ex. P, pp. 1-54 (amended Rule 3.850 motion)). Petitioner's amended Rule 3.850 motion raised eight grounds for relief: (1) ineffective assistance of trial counsel (Grounds A, D, E, F, G, H); (2) insufficient evidence (Ground B); and prosecutorial misconduct (Ground C). The state circuit court granted an evidentiary hearing and appointed postconviction counsel. (Ex. P, pp. 136, 153; Ex. Q (transcript of hearing and exhibits)). At the conclusion of the hearing, the court denied relief, stating its reasons on the record. (Ex. Q, pp. 265-75). A written order followed. (Ex. P, p. 154). Petitioner was appointed counsel on appeal. (Ex, P. pp. 164-65). The First DCA affirmed per curiam without opinion. *McCarthan v. State*, 163 So. 3d 1185 (Fla. 1st DCA 2015) (Table) (copy at Ex. T). The mandate issued June 8, 2015. (Ex. T).

While his Rule 3.580 proceeding was pending, petitioner filed a *pro se* petition for writ of habeas corpus in the First DCA on December 4, 2013, alleging ineffective assistance of direct appeal counsel. (Ex. U). The First DCA denied the petition on the merits. *McCarthan v. State*, 133 So. 3d 536 (Fla. 1st DCA 2014) (copy at Ex. V). Rehearing was denied on January 30, 2014. (Ex. W).

On July 12, 2015, petitioner filed another *pro se* petition for writ of habeas corpus in the First DCA alleging ineffective assistance of direct appeal counsel. (Ex. X).  The First DCA denied the petition on the merits on August 6, 2015.  *McCarthan v. State*, 171 So. 3d 215 (Fla. 1st DCA 2015) (copy at Ex. Y).

Petitioner filed his federal habeas petition on August 12, 2015.  (Doc. 1, p. 1).  The petition raises five grounds for relief including one claim of ineffective assistance of trial counsel, one claim of prosecutorial misconduct, and three claims of trial court error.  Respondent argues that each claim fails for one or more of the following reasons:  (1) the claim is procedurally defaulted, (2) the claim is without merit.  (Doc. 34).

## RELEVANT LEGAL PRINCIPLES

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner

"must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *See Boerckel*, 526 U.S. at 839-40, 848; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile – because the petitioner's claims would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))).

A claim is also considered procedurally defaulted if it was presented to the state court but rejected on the independent and adequate state ground of procedural bar or default. *See Maples v. Thomas*, 565 U.S. 266, 280, 132 S. Ct. 912, 181 L. Ed. 2d 807 (2012) ("As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds."

(alterations in original) (internal quotation marks and citations omitted)); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *See Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the state rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v.*

*Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*citing Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

Section 2254 Standard of Review

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d). A state court's factual determinations are presumed correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be

contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004). The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning

> their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The § 2254(d) standard "is difficult to meet . . . because it was meant to be."  *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court

factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## DISCUSSION

Ground One        "Ineffective Assistance of Counsel" (Doc. 1, p. 5).

Petitioner's first claim challenges trial counsel's strategic decision to pursue an abandonment defense over petitioner's preferred defense that the incident never happened and was fabricated by Mr. Robinson over a narcotics and gambling dispute. (Doc. 1, pp. 16-20 in ECF). Petitioner alleges that his conflict with counsel over the appropriate defense resulted in the presentation of contradicting defenses, because counsel's abandonment argument placed petitioner at the scene with possession of a firearm attempting to commit a robbery but abandoning the attempt,

while petitioner's trial testimony wholly denied the incident occurred and contended Robinson made up the story.

In addition to faulting counsel's choice of defense, petitioner also faults counsel for (1) failing to adequately cross-examine Mr. Robinson with prior inconsistent statements; (2) failing to have an investigator take pictures of the escape route petitioner was alleged to have used; (3) failing to provide petitioner a copy of Mr. Robinson's deposition; (4) refusing to present the trial court with evidence that petitioner was taking psychotropic medication, receiving psychiatric counseling, and had a history of psychiatric treatment and hospitalizations; (5) failing to object to the prosecutor's questioning petitioner, during cross-examination, about petitioner's possession of a firearm during a prior offense; (6) failing to contact witness Gabriel Hayes; (7) failing to provide petitioner with a transcript of his statements to police; (8) failing to obtain a transcript of a 911 call; (9) failing to get phone records to prove the substance of a phone call between petitioner and Mr. Robinson; (10) failing to request a jury instruction on the lesser included offense of aggravated assault with a firearm; and (11) failing to object to the prosecutor's theory that Robinson's driver license was an item of value. (Doc. 1, pp. 17-20 in ECF). Petitioner asserts he raised

all of these instances of ineffective assistance in his amended Rule 3.850 motion. (Doc. 1, p. 5).

Respondent construes petitioner's claim as asserting only that counsel "fail[ed] to argue that the victim fabricated the incident, focusing on a defense of abandonment instead." (Doc. 34, p. 15). Respondent concedes petitioner exhausted this ground of ineffective assistance in state court, but argues petitioner is not entitled to federal habeas relief because he has not met § 2254(d)'s difficult standard. (*Id.*, pp. 15-18). Respondent does not address petitioner's remaining complaints about counsel's performance.[3]

---

[3] Arguably, all but one of petitioner's complaints about trial counsel are procedurally defaulted because petitioner failed to brief or argue them in his postconviction appellate brief. To properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. Florida Rules of Appellate Procedure provide that when a motion for postconviction relief is denied after an evidentiary hearing, the defendant is required to file an initial brief. *See* Fla. R. App. P. 9.141(b)(3). Issues not addressed in the appellate brief are deemed waived. *See, e.g., Coolen v. State*, 696 So. 2d 738, 742 n. 2 (Fla. 1997) (noting that failure to fully brief and argue points on appeal "constitutes a waiver of these claims"); *Duest v. Dugger*, 555 So. 2d 849, 852 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."). Petitioner's counseled brief in his postconviction appeal presented only one issue: "THE CIRCUIT COURT ERRED IN CONCLUDING THAT TRIAL COUNSEL WAS NOT INEFFECTIVE FOR OPENING THE DOOR AND FAILING TO OBJECT TO TESTIMONY ABOUT THE DETAILS OF APPELLANT'S PRIOR CONVICTIONS AND FIREARM POSSESSION." (Ex. R, pp. 2, 19-33). The undersigned will not address the procedural default issue because respondent has not asserted that defense to Ground One.

A.    Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See Strickland*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 694).

Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The burden to overcome that presumption and to show

that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 134 S. Ct. at 17 (quotation marks and alterations omitted).

To establish prejudice, a defendant must show a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's

application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."

*Richter*, 562 U.S. at 105.  As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.    Section 2254 Review of State Court's Decision

Petitioner presented his ineffective assistance claim to the state circuit court in his amended Rule 3.850 motion.  The circuit court held an evidentiary hearing where petitioner and his former trial counsel Samuel Olmstead testified.  (Ex. Q).  After considering the evidence and argument, the circuit court denied relief on all aspects of petitioner's ineffective assistance claim:

> THE COURT:  All right.  I want y'all to help me pick up any issues that I missed.  There have been a number of issues that really have not been raised or presented here.  I mean, I think some of them are pretty apparent, like sufficiency of the evidence arguments that the defendant made in his motion.  Those aren't proper subjects for 3.850.  And there are some other issues of that nature.

Frankly – and let's just deal with – there is one – the one hard issue I think, one close issue is the question about the gun, which ultimately led to the questions about specifics of the defendant's prior record.  To me, that's the only close question here.

It's a little confusing, frankly, at this point in time on that subject.  And that's part of the problem with post-conviction matters when there's not – I mean, we're going back three years ago and trying to figure out what was going on.

The record is crystal clear today, at least based on Mr. McCarthan's unchallenged testimony, that he has eight prior felony convictions and that he previously indicated he had seven.  I think the law is clear, if that's the case, then the State is free to put into evidence the prior convictions and the substance of the convictions would be made known to the jury, all of them.

Frankly, we don't have a clear record on that because Mr. Olmstead [defense counsel] did not object to Mr. Bauer [the prosecutor] going further into the prior record.  Had it been raised, then our record would be clear.  So I do have to think that Mr. Olmstead in that respect made a mistake.  Of course, Strickland is not governed by somebody made a mistake or not made a mistake; it's was it deficient performance and was it prejudice.

I think Mr. Olmstead should have objected, would have been the better practice.  Then we would have the full record.

Let's assume we – I'm going to pursue this in two theories.  Maybe that's a little confusing, but let's first have the one theory that he lied about his record and, therefore, it was fair game.  But, assuming that's not the case, I agree with Mr. Olmstead that Mr. Bauer was free to ask the question whether the defendant ever carried a firearm.  I don't think Mr. Olmstead had to open that door.  I think that was a fair question to ask.

The mistake that was made, assuming that you don't accept Alternative A, is there should have been an objection then, when Mr. Bauer pursued that, that it was a collateral matter and that Mr. Bauer was stuck with the answer because it was a collateral matter.

It was certainly collateral whether, I forget the timing of it, but some many years prior to this the defendant had actually possessed a firearm. Had that objection been raised, then the record would be a little clearer here and we would know exactly what theory Mr. Bauer was pursuing.

Having said it was a mistake though, I don't think it was an unreasonable mistake. The definition of collateral evidence is pretty murky. It's not an area that many lawyers are well versed in. I don't think it's crystal clear what Judge Parsons would have ruled on whether it was collateral or not. It's simply my personal opinion at this point in time that it would have been my ruling it was collateral and I would not have allowed him to go into it. I think it's a pretty close legal question, so I don't find that it was a[n] unreasonable mistake.

I think clearer, I don't find that the defendant was prejudiced. He called two independent witnesses to say he didn't carry a gun. I apologize, I forget the witnesses' names.

MR. EVANS [Prosecutor]: McFadden and James?

MR. HARRISON [Postconviction defense counsel]: McFadden and James?

THE COURT: Right.

MR. HARRISON: Sandra McFadden and Jennifer James.

THE COURT: Right. There were two independent defense witnesses called to testify that Mr. McCarthan did not – they had never seen him with a gun and that he didn't regularly carry a gun.

Again, this was a little risky. I think maybe at that point it's a little clearer that I think Mr. Bauer could have again gone into, well, you say he didn't carry a gun, well, what about this prior conviction for possession of firearm? The defense made a strategy decision to call those two independent witnesses that obviously put this issue in question. It went well beyond what had been opened in the State's questioning earlier in the cross-examination.

Pursuing that further, the defendant's testimony, as I read it, he minimized the prior firearm convictions, said it really didn't amount to much, he spent three or four months in jail, he didn't really possess a gun, he entered into a plea to resolve the matter. He then went on to minimize and, frankly, deny many of the other crimes. I lost track a little, but I think Mr. Bauer asked him about four or five crimes. The defendant minimized them, denied conviction of many of them.

I just think on balance it's not anything that's likely to have affected the outcome of the trial and I don't think there's legal prejudice under Strickland requiring that the Court grant a motion for post-conviction relief.

Now, that to me is the close question. Let me cover the other issues that have been raised.

Abandonment. I think Mr. – I've read what was said by Mr. Olmstead. I think it was an alternative theory. I accept his testimony that it was discussed with the defendant. I reject the defendant's testimony. I think it was a reasonable strategy. It apparently succeeded with some jurors in the first trial. I don't find there was deficiency, nor prejudice.

All the various inconsistencies with Mr. Robinson, I think you could find that in every trial where two people testify. We have McCarthan, we have Robinson. I think you could go back and find inconsistencies in both of their testimonies. I don't think the perceived

inconsistencies that Mr. McCarthan is so passionate about here amounted to a thing.

I think Mr. Olmstead did a very adequate job of cross-examining Mr. Robinson. I don't find there was a deficiency or prejudice.

Copies of deposition. I don't find that was deficient, nor that there was prejudice. We don't even know they existed. There are many attorneys that don't want depositions floating around in the jail. It leads to bad outcomes and new witnesses. I don't think there's any issue there.

Medications the defendant raised. He says he wanted to raise it in mitigation. He doesn't contend he was incompetent. During the trial was not a time for mitigation. It didn't have anything to do with the trial. There was no deficiency or prejudice.

The witness, Betty Mitchell. It was considered by Mr. Olmstead and the defendant. They decided not to call an unwilling witness. That was certainly not deficient. It might well have been deficient to put the unwilling witness on the stand. I don't find there was deficiency or prejudice.

Mr. McCarthan now raises the specter of another witness, a Gabriel Hayes. I accept Mr. Olmstead's testimony that there was never any mention of Hayes. And it's clear that Mr. Olmstead did ask him to provide him with – provide Mr. Olmstead with any witnesses. It's in Defense Exhibit 1 that the defense put into evidence where he specifically asked Mr. McCarthan to make him aware of any witnesses that might be available. Mr. McCarthan chose not to do so.

I think it's totally speculative whether either one of them would have provided material evidence, whether either one of them were available to testify, and whether anything they had to say was admissible. So I don't find there's a lack of investigation. Nor do I find that it was error not to call those witnesses.

The 911 tape.  At Page 280 of the transcript Mr. Olmstead did object to the substance of the 911 tape being gone over.  It's totally speculative whether that would be exculpatory testimony.  It's not been presented.  Frankly, it's pretty unlikely it's exculpatory.  But I don't find any deficiency or prejudice.

Phone records.  Mr. McCarthan has a very confused idea of what phone records would be available.  I'm not aware, except in a jail setting, and maybe that's why he's mixed up, we're not talking about a jail setting.  Phone companies don't regularly keep recorded phone conversations.

I mean, he brings up the NSA now has been told to have recorded some phone calls.  I can assure you the State Attorney was not going to get NSA's records.  That's pretty far-fetched.  I don't find any prejudice or deficiency.

Going into gambling debts.  And this relates – and I skipped over this.  Gambling debts and the drug usage or selling drugs, I mean, I understand what Mr. Harrison is arguing, that maybe it makes his client look bad.  And in a vacuum that would be the case.  But, specifically, what they did here was try to tie Mr. Robinson into the drug dealing.  I mean, I've seen that defense used many times, to try to change this from a robbery to this is a bad drug situation where we have a dispute among drug dealers.  I've seen that strategy employed and be successful on a number of occasions.

I don't think that was a bad strategy.  I don't think it unnecessarily made the defendant look bad.  I agree, again, a strategy to lay it all out there and hope the jury accepts that he's being totally candid.  I don't find there was deficiency or prejudice.

The mention of prison and jail is volunteered by the defendant.  I think it's crystal clear here today that Mr. McCarthan is not a controllable witness.  He just starts out and he's going to say whatever

it is he wants to say. I don't care how long you've spent with Mr. McCarthan trying to prepare his testimony, I don't think you change that character trait.

I don't find there was a deficiency on Mr. Olmstead's part, nor that there was prejudice. And I would point out kind of the proof is in the pudding to some extent. All of that came out in the first trial and we had a hung jury where some jurors were prepared to accept the defendant's version. From Mr. McCarthan's perspective, it didn't turn out as well the second time around. But that doesn't mean that it was necessarily a wrong strategy.

I've tried to cover the issues that I think have been raised and presented here. I'll hear from the defense if there are any issues that you feel that I've not ruled on that I need to rule on, Mr. Harrison.

MR. HARRISON: Your Honor, in answer to your question, I have listened to you carefully. I don't have any further matters to bring up in this regard.

Now, my client, Mr. McCarthan, is a little upset. He says that he feels you have overlooked certain things. But, you know, I don't – I've worked on this pretty hard. I don't think there's anything else to discuss. He says he wants to address you. So I'll just tell you about that.

THE COURT: I gave him an attorney. I gave him a good attorney. I'm not going to listen to argument from him. Thank you.

Anything else, Mr. Evans?

MR. EVANS: There was one factual matter that you brought up, Your Honor, about the number of convictions. I got to look – when you said that, what he said, at the time of trial seven and today eight. When you go back and look at the record on Page 168, Line 17 through 21, Page 168, the defendant said seven convictions. If you go back and look at

Mr. Bauer's cross-examination, you'll find that there were at least eight that he covered. One was the firearm, the conviction by delinquent, which was on Page 180 around Line 18. Aggravated battery, there were three aggravated batteries the defendant admitted to. That was Page 181, Lines 16 through 20. There was a burglary and a grand theft, which looks like they were admitted to on Page 183, Lines 4 through 6. Felony fleeing to elude, which was Page 183, Line 25, and page 184, Line 2. And the possession of cocaine on Page 184, Lines 3 and 4. So, I think – that's eight, plus the defendant also admitted on Page 184, this is him adding more convictions than even he's admitted to today about some other felony convictions, the one over in Gadsden County. And he brought that up without Mr. Bauer soliciting that. That was Page 184, Lines 5 through 14.

So I believe there is record to support at the time of the cross-examination that the defendant admitted to more than seven convictions on cross-examination than the seven he admitted to on direct examination. So I believe there is record to support the inference that had an objection been raised, that would have been what Mr. Bauer would have raised, given the number of convictions that the defendant admitted to on the record.

THE COURT: I'm glad you pointed those out. Your math appears to be correct. I think we do have a situation where Mr. McCarthan, his record evidence was not truthful about his prior record, which opens the door.

Further, Mr. Harrison?

MR. HARRISON: No, Your Honor, except to make the point it was my understanding from the gist of what Mr. Bauer said when he went into the prior record, it wasn't the number of prior convictions being off, it was, quote, you just testified that you don't ever have a gun, what about this conviction for possession of firearm by convicted felon? I thought that was Mr. Bauer's thrust. And it would seem to me that his counsel had opened that door. But I've made that point.

> THE COURT: That is why I say I think Mr. Olmstead should have
> made the objection. We would have a better record now. But, in a
> review of the record, I think there are two theories by which it was
> admissible. And I don't find that there was prejudice, as I indicated.

(Ex. Q, pp. 265-75). The state circuit court's oral ruling was followed by a written

order stating, in relevant part: "Based on the reasons as announced on the record,

the Court finds that defendant has failed to show that he received ineffective

assistance of counsel or that he was prejudiced by any alleged deficiency." (Ex. P,

p. 154). The First DCA summarily affirmed. (Ex. T).

The relevant decision for purposes of 28 U.S.C. § 2254, is the First DCA's

summary affirmance, which is considered the final state court adjudication on the

merits of petitioner's claim (assuming, to petitioner's benefit, that the First DCA did

not impose a procedural bar). *See Richter*, 562 U.S. at 99 ("When a federal claim

has been presented to a state court and the state court has denied relief, it may be

presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law procedural principles to the contrary."); *Wilson v.

Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the

relevant decision for purposes of § 2254 review as the state appellate court's

summary affirmance of the lower tribunal's decision), *cert. granted sub nom. Wilson*

*v. Sellers*, 137 S. Ct. 1203, 197 L. Ed. 2d 245 (U.S. Feb. 27, 2017) (No. 16-6855).

Where, as here, "the last adjudication on the merits provides no reasoned opinion,

federal courts review that decision using the test announced in *Richter*." *Wilson*,

834 F.3d at 1235. The *Richter* test provides that "[w]here a state court's decision is

unaccompanied by an explanation," a petitioner's burden under section 2254(d) is

to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,*

562 U.S. at 98. "[A] habeas court must determine what arguments or theories

supported or, as here, could have supported, the state court's decision; and then it

must ask whether it is possible fairminded jurists could disagree that those arguments

or theories are inconsistent with the holding in a prior decision of [the United States

Supreme] Court." *Id.* at 102.

Petitioner must establish there was no reasonable basis for the First DCA to

deny relief on his ineffective assistance claim. In reviewing the reasonableness of

the First DCA's decision, this court may, but is not required to, look to the reasoning

of the state court below (the state circuit court). The Eleventh Circuit explained in

*Wilson*:

> When the reasoning of the state trial court was reasonable, there is
> necessarily at least one reasonable basis on which the state [appellate]
> court could have denied relief and our inquiry ends. In this way, federal
> courts can use previous opinions as evidence that the relevant state

court decision under review is reasonable.  But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

834 F.3d at 1239.

The First DCA reasonably could have adopted the state circuit court's factual findings, including its credibility determinations, because the record amply supports them.  *See* Exs. C, D (trial transcript); Ex. Q (evidentiary hearing transcript); *see also* 28 U.S.C. § 2254(e); *Consalvo v. Sec'y for Dep't of Corr*., 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.").  Based on the state circuit court's findings and the record of the trial and postconviction proceedings, the First DCA reasonably could have concluded that trial counsel's tactical decision to present an abandonment defense was not objectively unreasonable.  *See Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) ("We have long held that the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel."); *Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir. 1995) (holding that whether to pursue residual doubt or another defense is a strategy left to counsel, which courts must not second-guess).  The First DCA also reasonably could have concluded that petitioner's remaining complaints failed to satisfy

*Strickland*'s deficient performance and prejudice prongs for the reasons outlined by the lower court. Because it is not clear that the First DCA erred at all, much less erred so transparently that no "fairminded jurist could agree with that court's decision," *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011), petitioner is not entitled to federal habeas relief on Ground One.

 Ground Two        "Prosecutorial misconduct"  (Doc. 1, p. 6).

Petitioner claims the prosecutor engaged in misconduct when he portrayed Mr. Robinson (the victim), to the jury as a law-abiding citizen in poor health, allowed Mr. Robinson to testify with an oxygen tank and breathing apparatus (medical aids Robinson did not use during petitioner's first trial), and used Robinson's poor health to obtain petitioner's conviction based on jury sympathy for Robinson. Petitioner also complains the prosecutor misled the jury during closing argument concerning petitioner's prior record. (Doc. 1, pp. 21-24 in ECF). Petitioner states he presented this claim to the state courts in his Rule 3.850 proceeding. (Doc. 1, p. 7). Respondent asserts the claim is procedurally defaulted because the state court rejected it on the independent and adequate state procedural ground that it should have been raised on direct appeal and was not cognizable in a postconviction

proceeding.  (Doc. 34, pp. 19-23).  Respondent alternatively argues that even if not

procedurally defaulted, the claim fails on the merits.  (*Id.*, pp. 23-27).

"When a federal claim has been presented to a state court and the state court

has denied relief, it may be presumed that the state court adjudicated the claim on

the merits in the absence of any indication or state-law procedural principles to the

contrary.  The presumption may be overcome when there is reason to think some

other explanation for the state court's decision is more likely."  *Richter*, 562 U.S. at

99-100 (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed.

2d 706 (1991)).  The *Richter* Court's reference to *Ylst*, was to this portion of the

opinion:

> Where there has been one reasoned state judgment rejecting a federal
> claim, later unexplained orders upholding that judgment or rejecting the
> same claim rest upon the same ground.  If an earlier opinion "fairly
> appear[s] to rest primarily upon federal law," *Coleman*, 501 U.S., at
> 740, 111 S. Ct., at 2559, we will presume that no procedural default has
> been invoked by a subsequent unexplained order that leaves the
> judgment or its consequences in place.  Similarly where, as here, the
> last reasoned opinion on the claim explicitly imposes a procedural
> default, we will presume that a later decision rejecting the claim did not
> silently disregard that bar and consider the merits.

*Ylst*, 501 U.S. at 803 (emphasis added).

Petitioner did not raise this prosecutorial misconduct claim in his direct

appeal.  (*See* Ex. H (*Anders* direct appeal brief); Ex. I (*pro se* direct appeal brief)).

Petitioner first presented this claim to the state courts in his amended Rule 3.850 motion as Ground C.[4]  (Ex. P, pp. 25-33).  Petitioner did not pursue the prosecutorial misconduct claim at the Rule 3.850 evidentiary hearing.  (Ex. Q).  At the outset of the state circuit court's oral ruling, the court determined that those issues not pursued at the evidentiary hearing "aren't proper subjects for 3.850."  (Ex. Q, p. 265).  The court listed, for example, petitioner's sufficiency of the evidence claim, noting that "there are some other issues of that nature."  (*Id.*).  The court addressed the merits of only one claim – petitioner's ineffective assistance of counsel claim.  (Ex. Q, pp. 265-75).  On appeal from the circuit court's order, petitioner's counseled initial brief presented one issue:  "THE CIRCUIT COURT ERRED IN CONCLUDING THAT TRIAL COUNSEL WAS NOT INEFFECTIVE FOR OPENING THE DOOR AND FAILING TO OBJECT TO TESTIMONY ABOUT THE DETAILS OF APPELLANT'S PRIOR CONVICTIONS AND FIREARM POSSESSION."  (Ex. R, pp. 2, 19-33).  The First DCA summarily affirmed.  (Ex. T).

Assuming to petitioner's benefit (without deciding) that he did not abandon his prosecutorial misconduct claim by failing to pursue it at the postconviction

---

[4] Petitioner argued only that the prosecutor engaged in misconduct.  Petitioner did not argue that counsel was ineffective for failing to object to the alleged misconduct.

*Case No. 4:15cv406/MW/CJK*

evidentiary hearing, and even further assuming to his benefit that he did not waive the claim by failing to brief it in his postconviction appeal, *see* sources cited *supra* note 3, respondent has rebutted the *Richter* presumption by demonstrating that Florida law and the circumstances of this case make it more likely that the First DCA rejected petitioner's prosecutorial misconduct claim on the independent and adequate state procedural ground imposed by the lower court – the claim was not cognizable in a Rule 3.850 proceeding because it was a direct appeal issue.  *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."); *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) ("Florida law bars claims in a state post-conviction proceeding that could have been raised on direct appeal."); *Smith v. State*, 453 So. 2d 388, 389 (Fla. 1984) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").  Claims of prosecutorial misconduct – such as improperly appealing to the jury's emotions or misrepresenting evidence during closing argument – are direct appeal claims in Florida that are procedurally barred in collateral proceedings.  *See Gaskin v. State*, 737 So. 2d 509, 513 n.6 (Fla. 1999) (holding that prosecutorial misconduct claim raised in Rule 3.850 motion was

procedurally barred because it could have been raised on direct appeal), *receded from on other grounds*, *Nelson v. State*, 875 So. 2d 579 (Fla. 2004); *Morris v. State*, 50 So. 3d 696, 697 (Fla. 5th DCA) (holding that defendant's prosecutorial misconduct claim "is not cognizable in a postconviction motion and was properly denied").

The state court's imposition of Florida's procedural bar is adequate to support its judgment. *See LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 (11th Cir. 2005) (holding that because the Florida prisoner did not raise his claim on direct appeal, "the State 3.850 Court's refusal to consider" the claim because it was procedurally barred "rested on an independent and adequate state ground that precludes federal habeas consideration of this issue."); *see also id*. n.25 ("This Court has already concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law." (*citing Whiddon v. Dugger*, 894 F.2d 1266, 1267-68 (11th Cir. 1990))). Petitioner's claim is procedurally defaulted from habeas review. Petitioner makes none of the requisite showings to excuse his procedural default. Petitioner's procedural default bars federal habeas review of Ground Two.

<u>Ground Three</u>        "<u>Court Lack of Jurisdiction to Uphold Unlawful Conviction</u>"
(Doc. 1, p. 8).

Petitioner claims the trial court erred in denying his motion for judgment of

acquittal because there was insufficient evidence that he attempted to deprive Mr.

Robinson of anything of value or that a firearm was present during the incident.

(Doc. 1, pp. 25-26 in ECF).  Petitioner states he presented this claim to the state

courts in his Rule 3.850 proceeding.  (*Id*., pp. 8-9).  Respondent allows petitioner

satisfied the exhaustion requirement by presenting the issue in his *pro se* initial brief

on direct appeal.  Respondent argues petitioner is not entitled to habeas relief

because he fails to meet § 2254(d)'s difficult standard.  (Doc. 34, pp. 28-31).

A.    Clearly Established Federal Law

The Due Process Clause of the Fourteenth Amendment requires the State to

prove each element of the offense charged beyond a reasonable doubt.  *See Jackson*

*v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  "Under

*Jackson*, federal courts must look to state law for 'the substantive elements of the

criminal offense,' 443 U.S., at 324, n. 16, 99 S. Ct. 2781, but the minimum amount

of evidence that the Due Process Clause requires to prove the offense is purely a

matter of federal law."  *Coleman v. Johnson*, 566 U.S. 650, ——, 132 S. Ct. 2060,

2064, 182 L. Ed. 2d 978 (2012).  The federal standard finds evidence sufficient to

support a conviction "if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Johnson*, 132 S. Ct. at 2064 (*quoting Jackson*, 443 U.S. at 319).

B.    Section 2254 Review of State Court's Decision

Petitioner presented this claim as Ground One of his *pro se* direct appeal brief. (Ex. I).  The First DCA summarily affirmed petitioner's conviction without discussion.  (Ex. M).  The First DCA's decision qualifies as an adjudication on the merits.  *Richter*, 562 U.S. at 99.  Petitioner must show "there was no reasonable basis for the state court to deny relief."  *Id.* at 98.

Florida law defines the offense of robbery as "taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear."  Fla. Stat. § 812.13(1); *see also* Ex. A, pp. 95-96 (jury instructions).  Florida law defines the offense of criminal attempt as: "A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or

is intercepted or prevented in the execution thereof[.]"  Fla. Stat. § 777.04(1); *see also* Ex. A, pp. 94-95 (jury instructions).  "If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree[.]"  Fla. Stat. § 812.13(2)(a); *see also* Ex. A, pp. 96-97 (jury instructions).  "An act shall be deemed 'in the course of committing the robbery' if it occurs in an attempt to commit robbery or in flight after the attempt or commission."  Fla. Stat. § 812.13(3)(a).

 The trial evidence, taken in the light most favorable to the prosecution, shows that on April 9, 2010, the victim Mr. Robinson drove to the home of a friend, Gabriel Hayes, to pick up a gas can.  When Robinson got to the house, he noticed petitioner and another man walking toward him on the opposite side of the road.  Petitioner was wearing a red polo shirt, dark-colored denim shorts and glasses.  Mr. Robinson got the gas can from the porch and was about to open his truck door when, "they done came around behind me and aimed a pistol at my chest and say, well, empty your mother-fucking pockets."  (Ex. C, p. 40).  Mr. Robinson turned around and told them he did not have any money.  Petitioner had a .22 or .32 revolver, silver or chrome, and pointed it at Robinson's chest.  Mr. Robinson threw his wallet on the ground near them to show them he had no money.  Petitioner and the other man

looked at the wallet and walked off, "like they had done nothing wrong." Robinson testified that he feared for his life during the incident because petitioner was pointing a gun at him. Robinson recognized petitioner, but knew him only by his first name, Marlon. (Ex. C, pp. 31-65).

The First DCA's rejection of petitioner's claim indicates that it did not think the jury's finding of guilt "was so insupportable as to fall below the threshold of bare rationality." *Johnson*, 132 S. Ct. at 2065. That determination is entitled to deference under § 2254(d). Given the trial evidence, the First DCA reasonably could have concluded that a rational jury could find petitioner, while possessing a firearm, attempted to take Mr. Robinson's money or property with the intent to permanently deprive him of the money or property, and in the course of the taking put Mr. Robinson in fear. That Mr. Robinson may have made inconsistent statements goes to his credibility, but credibility determinations are within the exclusive province of the jury, not the court conducting federal sufficiency review:

> On sufficiency review, a reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a "meaningful opportunity to defend" against the charge against him and a jury finding of guilt "beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 314-315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The reviewing court considers only the "legal" question "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Id.*, at 319, 99 S. Ct. 2781 (emphasis in original).  That limited review does not intrude on the jury's role "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Ibid.*

*Musacchio v. United States*, — U.S. —, 136 S. Ct. 709, 715, 193 L. Ed. 2d 639 (2016).

The First DCA's rejection of petitioner's claim was not contrary to or an unreasonable application of the *Jackson* standard.  Petitioner is not entitled to federal habeas relief on Ground Three.

Ground Four        "Denial of Mistrial Motion"  (Doc. 1, p. 10).

Petitioner claims the trial court erred in denying his motion for mistrial based on the State's introduction of "improper character evidence".  Petitioner's claim is based on a comment made by a law enforcement witness (Investigator Todd) that after an arrest warrant was obtained, he notified investigators with the Career Criminal Unit because they are in charge of finding people who have violent felony warrants.  (Doc. 1, p. 28 in ECF).  Petitioner also claims the prosecutor improperly questioned him about prior convictions, some of which were not on his record and others which were from his juvenile record.  (*Id.*).  Petitioner states he raised this issue on direct appeal.  (*Id.*, p. 10).  Respondent concedes petitioner exhausted the

issue pertaining to Officer Todd's statement, but argues petitioner is not entitled to

federal habeas relief because the First DCA's rejection of the claim was not contrary

to and did not involve an unreasonable application of clearly established Federal

law.  (Doc. 34, pp. 32-38).

The first instance petitioner believes would have supported a mistrial occurred

during the prosecutor's direct examination of Investigator Todd:

> Q [Prosecutor]:  Did you try to look for Mr. McCarthan at this time?
>
> A [Investigator Todd]:  Yes, sir.  I obtained an arrest warrant in this case from that point and became – I notified investigators with the Career Criminal Unit.  They're in charge of looking for people who have violent felony warrants.

(Ex. C, p. 112).  Defense counsel requested a conference outside the presence of the

jury.  (*Id*.).  After the jury exited, this discussion took place:

> MR. OLMSTEAD [Defense counsel]:  Your Honor, at this point I would move for a mistrial.  On direct examination, right there in one sentence, the State's witness put out there allegations Mr. McCarthan is a career criminal and a violent felon.
>
> MR. BAUER [Prosecutor]:  No.  What he said was –
>
> THE WITNESS [Todd]:  No.  What I said is they're part of the Career Criminal Unit.  They don't go after people who have a prior arrest history.  That's not what that unit is for.  They go after people who have warrants to arrest for violent felony offenses.
>
> MR. BAUER:  Well, if I may –

THE WITNESS:  I apologize.

MR. BAUER:  – on behalf of the witness, Your Honor, what I recall the testimony being is he has – it was assigned to the Career Criminal Unit who has responsibility for executing warrants for violent felonies. My next question would be that would include attempted robbery with a firearm.

So we have not mentioned anything about a prior record.  I think counsel has jumped the gun so to speak.

MR. OLMSTEAD:  I'm saying that if the term career criminal unit, even bringing that up is prejudicial.  There's no other reason to bring it up.  You could just say the department that handles this.

THE WITNESS:  I'll be happy to explain.

THE COURT:  Hold on just a second.

Anything else you want to add, Mr. Bauer?

MR. BAUER:  No.  We'll just clarify to make sure that the Career Criminal Unit wasn't assigned because he's a career criminal.  In fact, for the record, I don't believe he qualifies as a career criminal under the statute.  This is a violent felony, and those are the folks that handle those.  I'm sure with the budget they do many things.  They're called the Career Criminal Unit, but they execute warrants on violent felonies.

THE COURT:  I'm going to deny the motion for mistrial.  But I'm also going to just explain to the jury that the unit that the warrant was assigned to is described as a Career Criminal Unit, but that is not to raise any inference that Mr. – that the defendant is a career criminal.

MR. BAUER:  Let me first, just for protocol purposes, is counsel requesting a curative instruction?  Or should we follow up with the witness?

MR. OLMSTEAD:  I would request a curative instruction.

MR. BAUER:  I just want to make sure he's requesting it.

THE COURT:  All right.  That's fine.  I'll go ahead, then, and give a curative.

   . . . .

THE COURT:  . . . Ladies and gentlemen, I just want to give you a cautionary instruction.  The witness has identified a unit as being the Career Criminal Unit which has responsibility for serving and executing certain types of warrants.  You should not draw any inference from the labeling of that unit, that the defendant has been classified, in any way as a career criminal.

  You may proceed, Mr. Bauer.

BY MR. BAUER:

Q:  And you mentioned that because that unit has jurisdiction over violent felonies?

A [Investigator Todd]:  Yes, sir.

Q:  And attempted robbery would be included with a firearm?

A:  Yes, sir.

(Ex. C, pp. 112-16).    The remaining instances concerning the prosecutor's questioning petitioner about prior convictions, including those on his juvenile record, occurred during cross-examination of petitioner.  (Ex. D, pp. 179-85).

A.    Claims Cognizable on Federal Habeas Review

Petitioner's claim here and on direct appeal to the First DCA is that the trial judge should have declared a mistrial because Investigator Todd's comment and the prosecutor's inquiry into petitioner's prior convictions violated Sections 90.403 and 90.404(2)(a) (2003), Florida Statutes, and Florida decisional law.  (Ex. I, pp. 28-30 (*pro se* direct appeal brief); Doc. 1, p. 27 in ECF (habeas petition)).   Neither petitioner's § 2254 petition, nor his state direct appeal brief, labels this claim as a federal claim.   Similarly, neither petitioner's § 2254 petition, nor his state direct appeal brief, cites the United States Constitution or federal case law in support of this claim.[5]  Petitioner's claim presents a purely state law issue.

Federal habeas relief is available to correct only constitutional injury.  *See* 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may

---

[5] Petitioner's § 2254 petition cites no case law to support this claim.  Petitioner's state direct appeal brief cited exclusively to state cases that did not address federal law.

*Case No. 4:15cv406/MW/CJK*

issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed. 2d 385 (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief; "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  "The writ of habeas corpus was not enacted to enforce State-created rights." *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000) (citation and quotation marks omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) ("Questions of state law rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'") (*quoting Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983)).  Petitioner's Ground Four does not present an issue of constitutional dimension and provides no basis for federal habeas relief.

    B.    Section 2254 Review of State Court's Decision

    Petitioner's reply argues, for the first time, that the First DCA's rejection of his claim is contrary to *Brown v. Payton*, 125 S. Ct. 1432 (2005).  (*See* Doc. 43, p.

24).  Even giving petitioner the benefit of the doubt that his purely state law issue could be transformed into one of constitutional dimension, he still is not entitled to habeas relief.  The First DCA's decision qualifies as an adjudication on the merits. *Richter*, 562 U.S. at 99.  As such, the issue is not whether Florida's evidence code or case law defining the boundaries of admissible evidence in Florida criminal trials prohibited Todd's testimony or the prosecutor's questioning.  Nor is the issue whether the United States Constitution prohibited the conduct.  The issue is only whether the First DCA's rejection of petitioner's claim was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(1).

Petitioner asserts, without favoring the court with an explanation, that the First DCA's decision "was contrary to clearly established Federal law found in <u>Brown v. Payton</u>, 125 S. Ct. 1432 (2005)."  (Doc. 43, p. 24).  In *Payton*, the Supreme Court considered whether a California jury instruction violated the Eighth Amendment by barring consideration of constitutionally relevant evidence relating to postcrime rehabilitation.  *See Brown v. Payton*, 544 U.S. 133, 135-36, 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005).  The Court held that the jury instruction did not violate the Eighth Amendment, and that although the prosecutor argued to the jury – incorrectly – that

the instruction did not permit consideration of postcrime rehabilitation evidence, the California Supreme Court reasonably applied clearly established Federal law in finding no Eighth Amendment violation.  544 U.S. at 142, 146-47.  Because *Payton* did not touch upon the issue raised here, *Payton* does not constitute clearly established federal law governing petitioner's claim.   Even assuming *Payton* constituted clearly established federal law, the First DCA's decision was not contrary to *Payton*, because the facts of this case are not materially indistinguishable from the facts of *Payton*.

No decision of the United States Supreme Court establishes that admitting, with a curative instruction, testimony of the kind here, or allowing cross-examination of a defendant in the circumstances at issue here, was so unfair as to violate a defendant's constitutional right to due process of law.  Petitioner fails to show that the First DCA's rejection of his claim was contrary to, or an unreasonable application of, clearly established Federal law.  *See, e.g., Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established federal law.") (internal quotation marks omitted); *see also, e.g., Reese v. Sec'y, Fla. Dep't*

*of Corr.*, 675 F.3d 1277, 1287-88 (11th Cir. 2012) (denying federal habeas relief on claim that prosecutor's comments during closing argument deprived the petitioner of a fair trial, holding; "[T]he Supreme Court has never held that a prosecutor's closing arguments were so unfair as to violate the right of a defendant to due process. . . . The Supreme Court has reiterated, time and again, that, in the absence of a clear answer – that is, a holding by the Supreme Court – about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").  Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five          "Trial court denial of judgment of acquittal"  (Doc. 1, p. 28 in ECF).

        Petitioner concludes his petition by averring the trial court erred in denying a motion for judgment of acquittal because "[t]he State failed to prove that Petitioner made any attempt to deprive Robinson of anything of value."  (Doc. 1, p. 28 in ECF). Petitioner asserts he presented this claim to the state court in his direct appeal.  (*Id*.). Respondent argues that this claim is the same as Ground Three above, and should be denied for the same reasons.  (Doc. 34, p. 38).  Petitioner concedes the point. (Doc. 43, p. 24).  This claim presents the same issue as Ground Three above, and is denied for the reasons stated in Ground Three.  *See* discussion *supra* Ground Three.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774, 197 L. Ed. 2d 1 (2017) (*quoting Miller-El*, 537 U.S. at 327).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would

find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000) (emphasis added). The petitioner here cannot make the requisite showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentences in *State of Florida v. Marlon McCarthan*, Leon County Circuit Court Case No. 10-CF-1349, be DENIED.

2. That the clerk be directed to close the file.

3. That a certificate of appealability be DENIED.

At Pensacola, Florida this 18th day of October, 2017.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**



NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.